# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MAURICE MCCLINTON, #R62401,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv−1040−NJR |
| | ) | |
| C/O DEAN, | ) | |
| C/O WATERS, | ) | |
| SGT. GREAR, | ) | |
| C/O LEVANTI, | ) | |
| C/O BOTARF, | ) | |
| C/O HUDSON, | ) | |
| NURSE CASEY, | ) | |
| JOHN DOE, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| and DANIEL LYNN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Maurice McClinton, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated in Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Shawnee Correctional Center ("Shawnee"). In his Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). He also claims that the defendants denied him grievance responses in violation of the First Amendment. (Doc. 1).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

>  (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

1

which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
        (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
        (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: at all times relevant to this action, Plaintiff was housed in segregation unit 1, cell 19, and had a cellmate named Marius Harris. (Doc. 1, p. 12). On May 29, 2017, at about 7:00 a.m., Plaintiff was waiting at his door to be put on the list for outside recreation. *Id.* Plaintiff believes he saw C/O Dean write or check his name down in front of his door. *Id.* At about 7:30 a.m., Plaintiff was experiencing shortness of breath and wheezing, so he took two puffs on his inhaler. *Id.* By 8:00-8:30 a.m.,

Plaintiff was experiencing an asthma attack. *Id.* He stood by his door to notify someone. *Id.* Around 9:00 a.m., Defendant Waters came to the back of the segregation unit where Plaintiff's cell was located. *Id.* Plaintiff got his attention and told him that he was having an asthma attack. *Id.* Waters responded that he would get the sergeant, though he did not activate the emergency response or call a Code 3, which left Plaintiff "hampering for breaths waiting." *Id.*

At about 11:00 a.m., Defendants Dean, Waters, and Sergeant Grear, along with inmate Valentine, came to pass out lunch trays. *Id.* Plaintiff got Waters's and Grear's attention and told them that he was having an asthma attack. *Id.* Grear responded, "It sounds like it," in a voice mocking Plaintiff's shortness of breath. *Id.* He then laughed along with Dean and Waters like it was a joke. *Id.* Inmate Valentine went around collecting lunch trays about an hour later, along with Dean. *Id.* Plaintiff asked Valentine why they were treating him this way, and Valentine told him that "Grear never works back here, but he never does anything for anybody." *Id.* Valentine then told Plaintiff that he would try to get him help next shift. *Id.*

Plaintiff planned to go outside for recreation time and get the attention of medical technicians there, but he never got the chance. *Id.* Instead, at approximately 12:45 p.m., while Defendants Waters and Dean were letting inmates out for recreation, Dean stopped at Plaintiff's cell, looked in at him, and proceeded to the next cell. (Doc. 1, p. 13). Dean ignored Plaintiff's attempts to tell him he signed up for yard. *Id.* No one came back down his hallway for the rest of the shift. *Id.* Plaintiff believes he was left in his cell because the defendants were watching a baseball game or "just wanted [him] to suffer or worst just die." *Id.*

At approximately 3:00 p.m. that day, Plaintiff waited at his cell door to notify the guards that he was having an asthma attack and had been since that morning. *Id.* As Defendants Levanti and Botarf were bringing inmates inside from yard, Plaintiff tried to speak to Levanti but was

3

told to wait. *Id.* Once Levanti got to Plaintiff's door, Plaintiff asked him to notify the nurse that he was having an asthma attack. *Id.* Levanti told him that the nurse would be doing rounds shortly. *Id.* In fact, the nurse's rounds were not until an hour and a half later. *Id.* At this point, Plaintiff was wheezing badly, to the point where he had to breathe in a controlled rhythm to try to eliminate some of his pain. *Id.* Plaintiff could not lie down because it made breathing difficult. *Id.* At about 4:00-4:30 p.m., Defendant Nurse Casey arrived for rounds. *Id.* When she was near Plaintiff's cell, Plaintiff got Levanti's attention to remind him of his distress. *Id.* Levanti held up a finger to Plaintiff acknowledging he remembered his request. *Id.* Levanti then whispered in Casey's ear, and Casey proceeded to Plaintiff's cell. *Id.*

Plaintiff told Casey he was having an asthma attack and in need of treatment. *Id.* She told him that she could only treat him with doctor's orders but that if he was still feeling the same way when she returned, she would follow protocol. *Id.* She then left Plaintiff to suffer, struggling for breath. *Id.* His chest and upper back were in pain with every breath. *Id.* Casey returned an hour or two later. *Id.* When she walked past Plaintiff's cell, Plaintiff got Levanti's attention. *Id.* He said something in a low voice to Casey and pointed at Plaintiff. *Id.* Casey then looked up at Plaintiff, said no to Levanti, and walked off to continue rounds. (Doc. 1, p. 15). By this time, Plaintiff was very weak and tired. *Id.* He wanted to sit or lie down, but his labored breathing became more difficult and painful when he tried to do so. *Id.* Plaintiff had been denied medical treatment by Nurse Casey on two previous occasions as well. *Id.*

Plaintiff became desperate for medical attention and believed he was flagged to be denied medical treatment by the first shift officers. *Id.* Around 7:00-7:30 p.m., Plaintiff got Defendant Botarf's attention. *Id.* Plaintiff told him that he needed to go to health care because he was having an asthma attack. *Id.* Botarf told him that he would call and left. *Id.* At 8:00 p.m., he

4

returned. *Id.* Plaintiff asked Botarf where health care was at, and Botarf told him that he had called and that he did not know why they would not come to see Plaintiff. (Doc. 1, p. 16).

Plaintiff believes Levanti and Botarf could have demanded that Plaintiff receive medical attention and did not have to let him suffer. *Id.* Plaintiff believes he was flagged for some reason, so he was left to suffer until 4:00-5:00 a.m. the next day. *Id.* He was in pain every time he breathed, in his upper back, chest, and the front or sides of his neck. (Doc. 1, p. 17). He could not and refused to fall asleep, though he dozed off standing up and squatting multiple times. *Id.* He was wheezing, and his lungs were making various sounds. *Id.* He believed he would die because he could not breathe. *Id.*

At the 11:00 p.m. shift change on May 29, 2017, Plaintiff waited by the door to tell the officer he was in need of medical attention. *Id.* Defendant Hudson came to Plaintiff's door, and Plaintiff told him that he was having an asthma attack. *Id.* Hudson made a mark on his note pad and continued his rounds without acknowledging Plaintiff, though they had been face to face with a door and window in between them. *Id.* Plaintiff tried to tell him again, and kicked on the door a couple of times, but he was too winded to kick more. *Id.* Hudson did not help him. *Id.*

Plaintiff dozed off multiple times during the early morning hours but would awaken gasping for air and in pain. (Doc. 1, p. 18). Plaintiff and his cellmate left the light in their cell on all night. *Id.* When breakfast trays were being passed out between 4:00-5:00 a.m., Plaintiff grabbed Hudson through the chuckhole and told him that he was having an asthma attack and could not breathe. *Id.* Hudson listened to him and called the nurse. *Id.* The nurse, Jane Doe, listened to Plaintiff's lungs, checked his vitals, and had him blow in a pressure tube. *Id.* She then immediately escorted Plaintiff to the health care unit for emergency treatment. *Id.*

Plaintiff was placed on a nebulizer machine after taking two puffs of his inhaler, which

Hudson had to retrieve from Plaintiff's cell. *Id.* The inhaler did not work, and Plaintiff had to wait approximately 45 minutes while Jane Does 1 and 2 got in contact with the doctor, Defendant Dr. John Doe, so he could consent to treatment. *Id.* Dr. John Doe, who was at work early at another prison, did not answer when the nurses called his cell phone, but he eventually answered 45 minutes later when he was at another prison facility. (Doc. 1, p. 19). After the nurses spoke with him, they pulled out the nebulizer machine to provide Plaintiff with treatment. *Id.* Plaintiff told the nurses that he had been in distress for nearly 24 hours after the defendants mentioned above denied him treatment. *Id.*

Plaintiff was placed on the nebulizer machine three times per day for three days after his initial attack. *Id.* The doctor and nurse called what he experienced "asthma exacerbation." *Id.* Plaintiff wheezed, and his lungs, upper back, and chest were in pain days after his initial attack. *Id.* He had trouble sleeping because it became harder to breathe while he was lying down. *Id.* Plaintiff was placed on a daily inhaler as a result of this incident. *Id.*

On June 6, 2017, Plaintiff filed six grievances on Dean, Waters, Grear, Levanti, Botarf, and Hudson with Defendant Daniel Lynn. (Doc. 1, p. 20). That day, Plaintiff also filed an emergency grievance against Nurse Casey with Lynn. *Id.* Two days later, his emergency grievance was denied, and Plaintiff was told to send it in the normal manner because it was not an emergency. *Id.* The grievances included questions to which Plaintiff wanted answers. *Id.* On June 20, 2017, Plaintiff turned in four more grievances through Seg. Porter Valentine when Lynn sent him around with a counseling survey. *Id.* These grievances involved Plaintiff's disciplinary ticket, Nurse Casey, Mental Health, and Defendant Dean and had been denied as non-emergencies on June 8, 2017. *Id.*

The questions Plaintiff asked with his grievances included whether Lynn received his

four new grievances, whether Lynn had received responses to his June 6 grievances, and how Plaintiff would retrieve his grievances because he was on disciplinary transfer. (Doc. 1, p. 21). Lynn responded that he had received responses to Plaintiff's previous grievances on June 22, 2017, but the response dates on the grievances themselves are July 5 and July 7, 2017. *Id.* Plaintiff was transferred to Menard on June 28, 2017, before he received responses to his grievances. *Id.* Plaintiff believes this was because Lynn intended to withhold Plaintiff's grievances about Nurse Casey and Sergeant Grear. *Id.*

Plaintiff was sent other inmates' grievance responses instead of his own. (Doc. 1, p. 22). He received five of the six June 6, 2017 grievances on July 14, 2017. *Id.* The grievance against Sergeant Grear was missing. *Id.* Though he was still awaiting the return of five more grievances, he only received one, the grievance regarding his ticket, on August 4, 2017. *Id.* Plaintiff believes Lynn was trying to cover up the incident, so he sent all of his documentation to Springfield Administrative Review Board. to show them what was going on. *Id.* These documents were not returned to him. *Id.* Plaintiff sent in the Emergency Grievance denial, because he did not receive a response from Casey, along with letters to the Springfield Administrative Review Board to inform them of the situation and to get help retrieving the responses that he never received. *Id.* Plaintiff re-wrote the grievance against Grear and sent a letter along with it as well. *Id.*

Defendant Wexford Health Sources, Inc. is "responsible for the training of medical staff . . . [and is] obligated to provide medically necessary care consistent with community standards, which the staff, Defendant Nurse Casey, did not." *Id.*

Plaintiff requests monetary damages from the defendants and injunctive relief in the form of psych evaluations of the defendants and an apology letter from each. (Doc. 1, p. 29).

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into two counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** On May 29-30, 2017, Defendants Dean, Waters, Grear, Levanti, Botarf, Hudson, Casey, John Doe, and Wexford Health Sources, Inc. showed deliberate indifference to Plaintiff's serious medical need involving an asthma attack in violation of the Eighth Amendment.
>
> **Count 2 –** Defendant Daniel Lynn violated Plaintiff's right to petition the government for redress of grievances by failing to provide him with grievance responses in violation of the First Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold, and Count 2 will be dismissed with prejudice. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

*Count 1 – Deliberate Indifference*

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has adequately pled an objectively serious medical need in the form of an asthma

attack. With respect to the subjective standard, "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Liability under the deliberate indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

At this early stage, Plaintiff has satisfied this standard with respect to Dean, Waters, Grear, Levanti, Botarf, Hudson, and Casey for failing to treat Plaintiff during his asthma attack and/or failing to seek treatment for Plaintiff despite knowing that he was suffering and in need of medical care. As to John Doe, Plaintiff claims that he delayed Plaintiff's treatment by failing to answer his phone while he was working at another prison. The doctor eventually answered, however, 45 minutes after Plaintiff arrived at the health care unit. These allegations do not indicate intentional wrongdoing on the part of John Doe. At most, they may suggest he was negligent in failing to answer his cell phone, but negligence does not constitute deliberate indifference. For this reason, John Doe will be dismissed from this action without prejudice.

With respect to Wexford, a corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a Section 1983 action). Plaintiff has not alleged that any of the defendants either acted or failed to act as a result of an official policy espoused by Wexford. Instead, he claims the individual defendants, particularly Defendant Casey, violated Wexford and IDOC

policies mandating the prompt treatment of inmates. Though Plaintiff notes that Wexford hires and trains the medical staff, he does not explain how this may have affected his treatment. Therefore, Plaintiff cannot maintain a deliberate indifference claim against Wexford, and Count 1 shall also be dismissed against this corporate entity.

Accordingly, Count 1 shall proceed against Dean, Waters, Grear, Levanti, Botarf, Hudson, and Casey; it will be dismissed without prejudice as against Wexford and John Doe.

*Count 2 – Grievance Responses*

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). Administrative remedies are considered to be unavailable under the PLRA, however, when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). In addition, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

The Complaint fails to state a First Amendment access to the courts claim against Lynn

for failing to provide Plaintiff with his grievance responses. His access to the courts could not have been impeded by the alleged actions, because the unavailability of administrative remedies, as explained above, is not a bar to potential litigants bringing their claims. Count 2 will therefore be dismissed with prejudice as frivolous. Because Plaintiff has otherwise failed to state a claim against Lynn, he will be dismissed from this action without prejudice.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) which is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshals Service or other process server. The Clerk will issue summons, and the Court will direct service for any complaint that passes preliminary review.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **DEAN**, **WATERS**, **GREAR**, **LEVANTI**, **BOTARF**, **HUDSON**, and **CASEY**; **COUNT 1** is **DISMISSED** without prejudice as against **WEXFORD** and **JOHN DOE**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** with prejudice as frivolous.

**IT IS FURTHER ORDERED** that **WEXFORD**, **JOHN DOE**, and **LYNN** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **DEAN**, **WATERS**, **GREAR**, **LEVANTI**, **BOTARF**, **HUDSON**, and **CASEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact

that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 15, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**